# NO. 12-08-00260-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *PATRICIA WILLIAMS,* *APPELLANT* | § | *APPEAL FROM THE 402ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *BEATRICE ROBINSON, LOY* *ROBINSON, and SHIRLEY ROBINSON,* *APPELLEES* | § | *WOOD COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Appellee, Beatrice Robinson, brought suit against her daughter, Appellant, Patricia Williams, seeking imposition of a resulting trust upon a rural house and four acres in Wood County. Loy and Shirley Robinson intervened in the lawsuit demanding specific performance by Williams of an oral contract to convey to Loy and Shirley three unimproved acres out of the same four acre tract. After a nonjury trial, the trial court rendered judgment imposing a resulting trust in favor of Beatrice and ordering specific performance of the oral contract to convey the three acres to Loy and Shirley. In three issues, Appellant contends that the trial court erred in imposing a resulting trust, ordering specific performance of the oral contract of sale of three acres, and awarding attorney's fees. We affirm in part, and reverse and remand in part.

## BACKGROUND

In 2001, Beatrice Robinson was a seventy-four year old widow living in her own home in Lone Oak, Hunt County, Texas. Her brother John Garrett was a childless widower of eighty-four. Since selling his house the year before, he had lived in a small rented room in Odessa. Beatrice and

John decided that the best solution to the problems presented by their age and cramped finances would be to live together close to Beatrice's daughter, Appellant, Patricia Williams, in Mineola, Texas. Beatrice looked at several places that Patricia had located in the area. She chose a small house on four acres that she thought suitable for her and her brother. Before she made any further progress toward the purchase, John had a massive stroke in October 2001 that left him unable to speak or move his hands. Later in October, Patricia arranged to move John from the Odessa hospital to a nursing home in Mineola. She and Beatrice went to Odessa and moved his belongings to Mineola.

On October 31, 2001, John nodded his assent to granting Patricia his power of attorney, and she guided his hand in signing the instrument. Patricia sold John's truck on November 5, 2001, transferred the approximately $1,000 he had in the bank into her account, and made herself the beneficiary of his small life insurance policies. She also directed that the $350 monthly payment John received from the sale of his Odessa house be paid to her. John died on November 20. Beatrice was the sole taker under his will, which was found later and never probated. Patricia gave her the $3,700 in proceeds from John's life insurance policies. The $1,000 from his bank account she paid on his funeral expenses.

The purchase of the house and four acres closed on December 21. Beatrice's $2,500 together with the $5,100 from the sale of John's truck covered the down payment, and Patricia signed a $46,800 promissory note secured by a deed of trust for the balance of the purchase price. Patricia was the grantee in the deed. Patricia began to apply the $350 note payment from John's house to the payments on the four acres. Beatrice then moved onto the property. Patricia bought her a new washer, dryer, and refrigerator.

Beatrice's son and Patricia's brother Loy Robinson and his wife, Shirley, wanted to buy three acres out of the four acre tract for Loy's nursery business. According to Loy, he and Patricia initially agreed on a $2,500 per acre purchase price. When Beatrice objected to the low price, he agreed to pay $3,000. No deed or written contract evidencing the oral agreement was ever executed. Nevertheless, on October 18, 2003, Loy and Shirley began sending monthly payments to Patricia. The checks bore the notation "land payments," and Patricia cashed them. Loy graded a parking area and paved it with rock, dug a well, constructed greenhouses, moved in a secondhand mobile home,

and installed a septic system.

However, discord between Beatrice and her daughter Patricia became so acute that Beatrice moved out of the house and back to Lone Oak on January 28, 2004, because she "just couldn't stand it any more." When Beatrice went back to Lone Oak, Patricia ceased to apply the $350 payments from John's house on the note secured by the house and four acres. The nine or ten remaining payments she sent to Beatrice. On May 3, 2005, Patricia refinanced the indebtedness against the property with Hibernia and obtained a twenty year loan at a fixed rate of 6.8%, with monthly payments of $355.21.

Shortly thereafter, on June 16, 2005, Loy and Shirley gave Patricia an amortization schedule relating to the three acres showing the amount due as $9,000 payable in five years at 7% interest, an interest rate only slightly higher than the 6.8% rate set in Patricia's recent Hibernia loan. Patricia executed no written instrument indicating her assent to the sale of the three acres on these terms. She did, however, accept and cash eleven monthly installment checks for $178 from Loy and Shirley bearing the notation "land payment." In August 2005, Loy had the three acres surveyed, and Patricia laid a chain link fence along the line dividing the three acres from the one acre remaining in the tract.

On September 15, 2005, Beatrice left Lone Oak and moved into a one room addition attached to Loy and Shirley's mobile home. Beatrice contended at trial that she could not move into the home on the one acre because the windows had been left open for the convenience of Patricia's cats. The cats and the rain, she testified, had made the house uninhabitable. Patricia testified that Beatrice left the house in a mess when she abandoned it and went back to her old house in Lone Oak. According to Patricia, she wanted Beatrice to move back into the house. She said Beatrice declined to live in the house, not because of its condition, but because it was too big for her.

Beatrice borrowed $10,000, and wanted to use $5,000 of the loan to fix up the house on the one acre so that it could be sold. She wanted Loy to have the other $5,000 to reduce what he owed on the three acres. Patricia and Loy could not agree on how to use Beatrice's $10,000. On June 12, Patricia sent a written demand in which she claimed that Loy and Shirley were her tenants from "month to month." She said that she had elected to terminate the "lease," and she demanded that "all occupants" vacate the property by August 1, 2006. Patricia cashed Loy and Shirley's regular payment on June 13, 2006, but she crossed out the notation "land payment" on the check and

3

substituted "lease payment."

Patricia argued at trial that her mother had an equitable right to live on the property until she abandoned that right by moving back to Lone Oak. In regard to Loy and Shirley's claim for specific performance of the oral contract to convey the three acres, she claimed that she had never agreed to sell Loy and Shirley the three acres, because a sale of three acres would reduce the value of the remaining one acre with the house on it.

Beatrice, on the other hand, maintained that a resulting trust immediately arose when she provided the money for the down payment and the legal title was granted to Patricia. Loy and Shirley contend that Patricia orally agreed to sell them the three acres and that they paid a consideration for the property, went into possession, and made valuable improvements.

## RESULTING TRUST

In her first issue, Patricia contends "[t]he trial court erred by ruling as a matter of law that a resulting trust was created for the entire legal title to the property in question."

### Standard of Review

This case was tried before the court, and the court entered findings of fact and conclusions of law. A trial court's findings of fact have the same force and effect as jury answers, and they are reviewed for legal and factual sufficiency of the evidence by the same standards applied in reviewing the legal and factual sufficiency of the evidence supporting a jury's finding. ***Anderson v. City of Seven Points***, 806 S.W.2d 791, 794 (Tex. 1991).

A trial court's conclusions of law are reviewed de novo, and the reviewing court affords no deference to the lower court's decision. ***State v. Heal***, 917 S.W.2d 6, 9 (Tex. 1996). Incorrect conclusions of law will not require reversal if the controlling findings of fact support a correct legal theory. ***BMC Software Belgium, N.V. v. Marchand***, 83 S.W.3d 789, 794 (Tex. 2002).

In conducting a legal sufficiency review, the appellate court must consider the evidence in the light most favorable to the verdict, and indulge every reasonable inference to support it. ***City of Keller v. Wilson***, 168 S.W.3d 802, 822 (Tex. 2005). The reviewing court must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. ***Id.*** at 827. "The final test for legal sufficiency must always be whether the evidence at trial

4

would enable reasonable and fair–minded people to reach the verdict under review." ***Id.***; *see also* ***Canal Ins. Co. v. Hopkins***, 238 S.W.3d 549, 557 (Tex. App.–Tyler 2007, pet. denied).

In reviewing a factual sufficiency challenge, the appellate court must consider, weigh, and compare all of the evidence that supports and that which is contrary to the finding. ***Sosa v. City of Balch Springs***, 772 S.W.2d 71, 72 (Tex. 1989). If the appellant is challenging the factual sufficiency of the evidence to support a finding on an issue on which the other party had the burden of proof, we must overrule the complaint unless, considering all the evidence, the finding is clearly wrong and manifestly unjust. ***Santa Fe Petroleum, L.L.C. v. Star Canyon Corp.***, 156 S.W.3d 630, 637 (Tex. App.–Tyler 2004, no pet.) (citing ***Garza v. Alviar***, 395 S.W.2d 821, 823 (Tex. 1965)). "Reversal [can] occur because the finding [is] based on weak or insufficient evidence or because the proponent's proof, although adequate if taken alone, is overwhelmed by the opponent's contrary proof." ***Santa Fe Petroleum***, 156 S.W.3d at 637.

> When reviewing factual sufficiency issues arising from a bench trial, we must remember that the trial court, as the trier of fact, is the sole judge of the credibility of the witnesses. ***Canal***, 238 S.W.3d at 557 (citing ***Santa Fe Petroleum***, 156 S.W.3d at 638). The trial court may take into consideration all of the facts and surrounding circumstances in connection with the testimony of each witness and accept or reject all or any part of that testimony. ***Canal***, 238 S.W.3d at 557-58 (citing ***Santa Fe Petroleum***, 156 S.W.3d at 638). Where enough evidence is before the trial court so that reasonable minds could differ on the meaning of the evidence, or the inferences and conclusions to be drawn from the evidence, we may not substitute our judgment for that of the trial court. ***Canal***, 238 S.W.3d at 558 (citing ***Santa Fe Petroleum***, 156 S.W.3d at 638).

***Sembera v. Petrofac Tyler, Inc.***, 253 S.W.3d 815, 824-25 (Tex. App.–Tyler 2008, pet. denied).

"Unchallenged findings of a fact are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding." ***Zagorski v. Zagorski***, 116 S.W.3d 309, 319 (Tex. App.–Houston [14th Dist.] 2003, pet. denied). "Any unchallenged findings of fact that support the judgment will preclude reversal of the case." ***Id.***

## Applicable Law

The record owner of property is presumed to be its true owner, and one asserting that the ownership is burdened by a parol trust has the burden of establishing its existence. ***Somer v. Bogart***, 749 S.W.2d 202, 203 (Tex. App.–Dallas 1988, writ denied). "A purchase money resulting trust may be established where one takes a deed to property in [her] own name, but the purchase money is

provided by another." ***Id.*** at 204. The person paying the purchase money is the equitable owner of the property, and the transferee is a mere trustee and holds for the benefit of the one who furnished the money. *See* ***Nolana Dev. Ass'n v. Corsi***, 682 S.W.2d 246, 250 (Tex. 1984). "The trust must result, if at all, at the instant the deed is taken, and the legal title vests in the grantee." ***Wright v. Wright***, 134 Tex. 82, 86, 132 S.W.2d 847, 849 (1939); ***Parker v. Coop***, 60 Tex. 111, 118 (1883). "No oral agreements, and no payments, before or after title is taken, will create a resulting trust, unless the transaction is such at the moment the title passes that a trust will result from the transaction itself." ***Wright***, 134 Tex. at 86, 132 S.W.2d at 849; ***Parker***, 60 Tex. at 118.

Where a purchase money resulting trust is claimed and only part of the purchase money is contributed by the person whose name does not appear on the deed, the trust claimant's ownership extends to the proportion that her contribution bears to the total price. ***San Antonio Loan & Trust Co. v. Hamilton***, 155 Tex. 52, 66, 283 S.W.2d 19, 28 (1955); ***Wright***, 134 Tex. at 86, 132 S.W.2d at 850; *see also* RESTATEMENT (SECOND) TRUSTS § 454 (1959).

A resulting trust will arise from the purchase of land on credit even though the grantee gives her note for the purchase price, if the trust claimant can establish that she, before or concurrently with the conveyance to the grantee, became bound to pay the note or to pay the grantee for the money advanced on the grantee's credit. ***Vicars v. Quinn***, 154 S.W.2d 947, 949 (Tex. Civ. App.–El Paso 1941, no writ); *see also* 72 TEX. JUR. 3D ***Trusts*** § 189 (2003). The Texas rule is in accord with the Restatement:

> Where a transfer of property is made to one person, and another person at the time of the transfer undertakes an obligation to pay the purchase price, a resulting trust arises in favor of the latter person, unless [s]he manifests an intention that no resulting trust should arise.

RESTATEMENT (SECOND) OF TRUSTS § 456 (1959). Therefore, a resulting trust arises "although the transferee undertakes an obligation to the vendor for the balance of the purchase price, [if] the other [the trust claimant] agrees [s]he will discharge the obligation to the vendor." ***Id.*** The Restatement further provides that the transferee retains a security interest in the trust property to indemnify her in the event she is compelled to make payment to the vendor and she is not reimbursed by the trust beneficiary. ***Id.***

6

## Discussion

Patricia insists that the intention of the parties when the property was acquired was not to create a trust, but to create a contractual right for Beatrice "to live on the property for the rest of her life which she has done with no interruption [by Patricia]." Patricia argues that she paid the vast majority of the purchase price with the proceeds of a thirty year installment loan she obtained. It was, in her view, Beatrice who breached the agreement by voluntarily abandoning the house, accepting the remaining ten payments of $350 due from the sale of John's house in Odessa, and not applying the payments on the purchase price.

Beatrice stresses that Patricia concedes, and the trial court found, that all the money paid at closing belonged to Beatrice. Patricia also admits, and the trial court found, that after the purchase, Patricia collected payments due on the sale of Uncle John's house in Odessa and applied the proceeds to the payment of the $46,800 thirty year installment note, which she had given in payment of the balance of the purchase price. Both parties agree, and the trial court found, that the payments collected on Uncle John's house belonged to Beatrice, and that for two years, Patricia paid the mortgage note with those payments.

Beatrice and Patricia agree that, at the time the property was purchased, it was their intention that Beatrice use and possess the property for as long as she lived and that the property would belong to Patricia at Beatrice's death. The trial court so found.

Beatrice insists that these unchallenged findings of fact justify the trial court's conclusion that Beatrice is the owner of the property as the beneficiary of a purchase money resulting trust. We disagree.

If a resulting trust arose out of the purchase of the house and four acres, it came into being contemporaneously with the closing on December 18, 2001, the time the legal title was vested in Patricia, the grantee in the deed. The parties agree, and the trial court found, that all the $7,500 down payment and closing costs paid at closing came from Beatrice. But it is also undisputed that Patricia paid the balance of the purchase price with the proceeds of a thirty year $46,800 note she made to Homecomings Financial Network. We have searched the record, and we are unable to find evidence that Beatrice, either before or concurrently with the conveyance to Patricia, promised to be responsible for paying the indebtedness against the land. It was simply understood that the

7

remaining thirty monthly payments of $350 from the sale of Uncle John's home in Odessa would be applied to the payment of the note Patricia had signed to Homecomings Financial. At the time of the transfer, only thirty payments remained to be collected from the sale of Uncle John's house, whereas 360 payments remained on the note signed by Patricia. The question is who was to make the 330 remaining payments on Patricia's note after the thirty payments on Uncle John's house had been paid. The record does not show, nor does it contain evidence from which we can infer, that Beatrice became obligated to pay the balance due on the thirty year mortgage after the payments on Uncle John's Odessa house had ceased.

There is some evidence that Beatrice intended to make payments on the note if her house sold or "if [she] had to." But the record fails to demonstrate a legal obligation to make the note payments. Beatrice testified regarding the note payments as follows:

Q.      You gave her $2,500 prior to the time she bought this property, correct?

A.      That and the sale of my brother's truck.

Q.      Right. And so you knew there was going to be a lot more money required to buy this property than just what you had advanced to Pat?

A.      Well, if my house sold, I was going to put that money up and make payments on it when that ran out, but as it happened, it didn't go that far.

Q.      There was a contemplation that you would sell your house and you would apply that money to the purchase of - -

A.      Later if I had to, yes, sir.

Q.      Right. And so all of that kind of fell through, didn't it?

A.      Yes. I talked with Pat about selling the house and she agreed to sell it.

Q.      In fact, in your deposition, when you moved out, all you wanted back was your down payment, correct?

A.      The down payment and closing costs.

While this is some evidence that the parties contemplated that Beatrice might make the note payments, the evidence falls far short of showing an enforceable agreement to do so. Nor does the record contain evidence from which we can infer that Beatrice became obligated to pay Patricia the

8

amount of the note. Accordingly, we hold that the trial court erred in concluding that Beatrice's payment of $7,500 in down payment and closing costs gave her the entire equitable title as the beneficiary of a resulting trust. Patricia's first issue is sustained.

### SPECIFIC PERFORMANCE OF ORAL CONTRACT FOR SALE OF LAND

In her second issue, Patricia complains that

[t]he trial court erred by ordering specific performance of an oral contract for sale of 3 acres of the property to Appellees Loy and Shirley Robinson because there was a failure of consideration, a breach of the oral agreement that Appellees contend existed, no evidence of permanent and valuable improvements, and specific performance is impossible when the legal title holder does not have clear title and the bank lien holder is not a party to the suit.

## Applicable Law

To relieve a parol sale of land from the operation of the statute of frauds, three things are necessary: (1) payment of the consideration, whether it be in money or services, (2) possession by the vendee, and (3) the making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor, or, without such improvements, the presence of such facts as would make the transaction a fraud upon the purchaser were it not enforced. *Hooks v. Bridgewater*, 111 Tex. 122, 126-27, 229 S.W. 1114, 1116 (1921). "Each of these three elements is indispensable, and they must all exist." *Hooks*, 111 Tex. at 127, 229 S.W. at 1116.

Patricia insists that the oral contract, if any, to sell the three acres to Loy and Shirley was unenforceable because (1) the improvements that Loy and Shirley made on the property were not permanent and had little value, (2) Loy stopped making payments to her and began making them to Beatrice, and (3) there is no evidence that she consented to the improvements. These arguments are without merit.

The record shows that Loy and Shirley made permanent and valuable improvements on the three acres in reliance on the oral contract. They did extensive surface work to convert a raw pasture into a retail nursery and parking lot; they drilled a water well and installed nursery buildings and plumbing. The evidence shows that they expended $32,000 in making these improvements.

Loy and Shirley made regular payments to Patricia in accordance with an amortization schedule. The checks were denominated "land payments," and Patricia cashed them. Loy and Shirley ultimately stopped making payments to Patricia and began making payments to Beatrice, but

9

only after it became clear that Patricia intended to repudiate the contract. Under the circumstances, however, Loy and Shirley's payments to Beatrice instead of Patricia did not render the oral contract unenforceable for failure of consideration.

There is also ample evidence that Patricia consented to the improvements made to the three acres. In fact, the record shows that she was actually present on the property while Loy was making some of the improvements. And a photograph shows Beatrice present and smiling while Loy was driving a bulldozer constructing a parking lot for the nursery.

Patricia next argues that the oral contract is unenforceable because Hibernia, the mortgagee, was not a party to the lawsuit. However, Patricia did not raise the nonjoinder of the mortgagee in the trial court. The nonjoinder of a necessary party cannot be raised for the first time on appeal. *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982).

Finally, Patricia complains that Loy and Shirley seek equity but come with "unclean hands." It is true that one who seeks equity must come with clean hands. *Omahundro v. Matthews*, 161 Tex. 367, 381, 341 S.W.2d 401, 410 (Tex. 1960). However, the rule is not absolute.

> The party to a suit, complaining that [her] opponent is in court with "unclean hands" because of the latter's conduct in the transaction out of which litigation arose, or with which it is connected, must show that [she] has been injured by such conduct, to justify the application of the principle to the case. The wrong must have been done to the defendant [herself] and not to some third party.

*Id.* (quoting 2 POMEROY'S EQUITY JURISPRUDENCE 99 (4th ed.)). Patricia's complaint of unclean hands is based upon Beatrice's alleged wrongdoing in securing a government loan upon her home in Lone Oak, a transaction separate from the dispute from which this lawsuit arose. There is no evidence that Loy and Shirley had anything to do with the claimed misconduct or that Patricia was injured by it.

Loy and Shirley paid consideration for the property, took possession, and made permanent and valuable improvements upon it with Patricia's consent. There was no failure of consideration, and the clean hands doctrine does not defeat Loy and Shirley's claim. Therefore, the trial court did not err in ordering specific performance of the oral contract. Patricia's second issue is overruled.

10

**ATTORNEY'S FEES**

In her third and last issue, Patricia maintains the trial court erred in awarding attorney's fees based upon its ruling that Beatrice recover title to and possession of the four acre tract as beneficiary of a resulting trust. Because we have sustained Patricia's first issue, we hold that the trial court erred in awarding attorney's fees against Patricia based upon Beatrice's claim of resulting trust. Patricia's third issue is sustained.

**CONCLUSION**

Because we have held that the trial court erred in concluding from its findings of fact that Beatrice was entitled to the ownership and possession of the four acre tract based upon the theory of resulting trust, we *reverse* that portion of the judgment and *remand* for a new trial. We *affirm* that portion of the judgment awarding Loy and Shirley specific performance of the oral contract to convey three acres out of the four acres. Since we are unable to determine what portion of the attorney's fees award is based on Beatrice's claim of resulting trust and what portion is related to Loy and Shirley's suit for specific performance, we *reverse* the award of attorney's fees and *remand* for a new trial.

BILL BASS
Justice

Opinion delivered July 31, 2009.
*Panel consisted of Griffith, J., Hoyle, J., and Bass, Retired Justice, Twelfth Court of Appeals, Tyler, sitting by assignment.*

(PUBLISH)